LEROY J. OMERZA AND BETTY J. OMERZA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Omerza v. Commissioner
Docket No. 24138-90
United States Tax Court
T.C. Memo 1992-206; 1992 Tax Ct. Memo LEXIS 243; 63 T.C.M. (CCH) 2690; April 6, 1992, Filed *243 An order granting respondent's motion for partial summary judgment and denying petitioner's motion for partial summary judgment will be issued. On cross-motions for partial summary judgment, the parties stipulated that Ps paid $ 3,200 to participate in a tax shelter that was a sham transaction without economic substance, but that Ps participated therein with the intent to make a profit. Ps conceded that they were not entitled to the $ 32,000 advertising expense deduction claimed on their income tax return, but asserted that they are entitled to a deduction under sec. 165(c)(2), I.R.C., for the loss of their out-of-pocket cash expenditure. 1. Held: Ps are not entitled to deduct their payment under sec. 165(c)(2), I.R.C. If a tax shelter transaction is a sham that lacks economic substance, the taxpayer's state of mind is irrelevant under sec. 165(c)(2), I.R.C.
2. Held, further, Ps are not entitled to a theft loss deduction under sec. 165(c)(3), I.R.C., in 1986, inasmuch as they did not discover the loss until a later year. Mark E. Gammons, for petitioners. Dawn M. Krause, for respondent. BEGHE
BEGHE
MEMORANDUM OPINION BEGHE, Judge: Respondent determined *244 a deficiency of $ 11,782 in petitioners' Federal income tax for the year 1986. Respondent also determined that petitioners were liable for additions to tax under sections 6653(a)(1)(A) and (B), and 6661(a). [1]
This matter is before the Court on cross-motions for partial summary judgment. [2] The issue for decision is whether petitioners are entitled to a deduction under section 165(c) for their cash expenditure to participate in a tax shelter. The parties have stipulated for the purpose of the motions that the tax shelter was a sham without economic substance, but that petitioners participated in the tax shelter with the intent of making a profit. *245 The issues of fact raised by respondent's determinations of additions to tax have been reserved for subsequent disposition should we sustain respondent's position on these motions. The motions before us present no genuine issue of material fact. Background
Petitioners resided in Willoughby Hills, Ohio, at the time they filed their petition in this case. All references to petitioner are to Mr. Omerza. Petitioner is a maintenance foreman with the Lincoln Electric Co. in Euclid, Ohio. He is a high school graduate and studied at the college level for one semester. Petitioner has no business or tax training. In the early 1980s, petitioner was introduced to Thomas Graham through a contact at the Lincoln Electric Co. Mr. Graham identified himself as an investment counselor and financial adviser and offered petitioner investment opportunities in various tax shelters. Mr. Graham told petitioner that participants in these tax shelters could recover their initial cash outlay through refunds of withheld income taxes. Over several years petitioner invested in various tax shelters promoted by Mr. Graham. The tax shelter at issue in this case is known as Gifts. Although the record *246 on the pending motions does not explain how Gifts purported to operate, that lack does not impede us from deciding the case on the basis of the narrow issue presented for decision. During the taxable year 1986, petitioner made a $ 3,200 cash payment to participate in Gifts. Petitioners claimed a $ 32,000 deduction under section 162(a) for advertising expenses on their 1986 Federal income tax return in connection with Gifts. After examining the returns of Gifts and its various participants, respondent disallowed petitioners' claimed deduction for advertising expenses in its entirety and determined a deficiency in petitioners' Federal income tax for 1986. Petitioners concede that they are not entitled to the $ 32,000 deduction claimed on their return, but assert that they are entitled to a $ 3,200 loss deduction under section 165(c)(2) for their out-of-pocket cash expenditure, none of which has ever been returned to them. For the purpose of these motions, the parties have stipulated that Gifts was a sham transaction without economic substance, but that petitioners participated in Gifts with the intent of making a profit. Petitioners did not know that Gifts was a sham when they *247 paid their $ 3,200 to Mr. Graham or when they filed their income tax return for 1986. For the reasons that follow, we hold that petitioners are not entitled to any deduction under section 165(c). Discussion
1. Section 165(c) (2)
Section 165(c)(2) provides that a deduction shall be allowed for any loss sustained during the taxable year, not compensated for by insurance or otherwise, incurred in any transaction entered into for profit, though not connected with a trade or business. We have considered a number of tax shelters promoted by Mr. Graham and have decided dozens of cases brought by the participants in these shelters. See, e.g., Rybak v. Commissioner, 91 T.C. 524 (1988); Omerza v. Commissioner, T.C. Memo. 1992-113; Cullin v. Commissioner, T.C. Memo. 1992-71; Bennett v. Commissioner, T.C. Memo. 1992-69; Illes v. Commissioner, T.C. Memo. 1991-449; see also Schlechty v. Commissioner, T.C. Memo. 1992-115; Parson v. Commissioner, T.C. Memo. 1992-70; Menardi v. Commissioner, T.C. Memo. 1992-57; Hattersley v. Commissioner, T.C. Memo. 1992-55. *248 In this case, the parties have asked us to preside over the ceremony in which we nail down the coffin to which we consign the lost hopes of Mr. Graham's gullible investors to salvage some residual tax benefit from their participation in the spurious tax shelters that he promoted. We have invariably held that these tax shelters lacked economic substance and that the participants were not entitled to deduct their out-of-pocket expenditures under section 165(c)(2). In so doing, we either found that the taxpayer lacked a profit motive or stated that it was unnecessary for us to make a finding on the issue because we would decide the matter on the ground that the transaction was a sham. See, e.g., Illes v. Commissioner, supra; Jackson v. Commissioner, T.C. Memo. 1991-250. In these opinions we have made clear our view that a subjective profit motive does not suffice to allow a deduction under section 165(c) (2) when the transaction is objectively shown to be a sham without economic substance. This case reflects an attempt by petitioners' counsel -- and respondent's willingness to accommodate him -- to obtain a decision that a taxpayer, who *249 actually has the subjective intent, motive, or purpose to make a profit, [3] can be entitled to a deduction for an out-of-pocket loss under section 165(c)(2) for a payment to participate in a sham transaction that lacks economic substance. As noted above, our prior opinions on this subject have made clear the Court's view that, even if a taxpayer had a subjective profit motive, a payment to participate in a sham transaction lacking in economic substance cannot have been made in a transaction "entered into for profit" within the meaning of section 165(c)(2). See Illes v. Commissioner, supra.
*250 In Illes v. Commissioner, supra, we found that a tax shelter known as Children's Classic Audio Cassettes (CCAC) promoted by Mr. Graham was a sham without economic substance and that the taxpayer lacked a subjective profit motive. We therefore held that the transaction was not recognized for tax purposes and that the taxpayer was not entitled to deduct the loss of his cash investment in CCAC under section 165(c)(2). In Illes v. Commissioner, supra, we also discussed whether a section 165(c)(2) deduction would be allowed if the transaction was a sham and the investor had a subjective profit motive. We looked to Cherin v. Commissioner, 89 T.C. 986 (1987), for guidance, stating that: Even if we were to assume that petitioner had a profit motive, petitioner could not prevail in this case because the transactions lacked economic substance. See Cherin v. Commissioner, 89 T.C. 986, 993-994, (1987), where we held that the presence of an individual's profit motive does not require the recognition for tax purposes of a transaction which lacks economic substance.
Thus, in Illes we expressed *251 the view that because CCAC was a sham without economic substance, the taxpayer's subjective profit motive would not change the result. Accord Jackson v. Commissioner, supra.
Although our decisions in Cherin v. Commissioner, supra, Illes v. Commissioner, supra, and Jackson v. Commissioner, supra, did not require factual findings that the taxpayer had a subjective profit motive, inasmuch as the respective transactions were disregarded for their lack of economic substance, we observed in Cherin v. Commissioner, supra at 993-994, that: We have never held that the mere presence of an individual's profit objective will require us to recognize for tax purposes a transaction which lacks economic substance. The economic substance of a business transaction and the intent, purpose, or motive of an individual investor, while sometimes equated, are not identical. A business transaction by its very nature must have economic substance, that is, a realistic potential for profit. * * * Subjective intent cannot supply economic substance to a business transaction. * * * [Fn. *252 refs. and citation omitted.]
Following this approach, we have consistently stated that, even if a taxpayer invests with the subjective intent of making a profit, the investment will not be recognized for tax purposes if the overall transaction is a sham without economic substance. Illes v. Commissioner, supra; Jackson v. Commissioner, supra. We continue to adhere to this view and we apply it as the rule that governs this case. By asking us to decide that petitioners are entitled to a deduction under section 165(c)(2), and obtain a stipulation that (1) Gifts was a sham without economic substance, but (2) that petitioners had the subjective intent of making a profit, petitioners ask us to conclude that subjective intent overcomes a lack of economic substance. Such is not the case. Mahoney v. Commissioner, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985). The rule is that if, objectively, the transaction is a sham without economic substance, it is not recognized for tax purposes, and the out-of-pocket cost to participate therein is not deductible under *253 section 165(c)(2) as a loss incurred in a transaction entered into for profit, notwithstanding the taxpayer's subjective intent to make a profit. See Mahoney v. Commissioner, supra; Cherin v. Commissioner, supra; Illes v. Commissioner, supra; Jackson v. Commissioner, supra.See also Gardner v. Commissioner,     F.2d    , 69 AFTR 2d 92-401, at 710, 92-1 USTC par. 50,079, at 83,313 (2d Cir. 1992), affg. T.C. Memo. 1988-570 ("it is well established that a subjective profit motive can not save a transaction that objectively lacks economic substance"). The mere fact that petitioners had a subjective profit motive does not entitle them to a deduction under section 165(c)(2) when the objective facts reveal that the transaction was a sham without economic substance. The parties have stipulated that Gifts was a sham without economic substance. As a result, petitioners' cash payment to participate in Gifts is not recognized for tax purposes, notwithstanding their subjective profit motive. Petitioners are not entitled under section 165(c)(2) *254 to deduct their cash payment of $ 3,200. 2. Section 165(c)(3)
Petitioners' motion asked for partial summary judgment under section 165(c) (2) "for actual cash expenditures incurred in a transaction entered into for profit", while respondent's motion asked for partial summary judgment "in respondent's favor upon the issue of whether petitioners are entitled to a deduction in 1986, under I.R.C. § 165(c), for cash payments made in 1986." Respondent's memorandum of law in support of her motion for partial summary judgment states that "Although petitioners couch their argument under I.R.C. § 165(c)(2), they are actually asserting that their loss was incurred by theft under I.R.C. § 165(c)(3)." Respondent's point is that petitioners thought they were entering into a transaction that had economic substance and an objective possibility of making a profit, but were defrauded by Mr. Graham, the Gifts promoter, and that in effect Mr. Graham stole their $ 3,200. Section 165(c)(3) provides, among other things, a deduction for losses of property due to theft. However, theft losses are not deductible until the year of discovery. Sec. 165(e); sec. 1.165-8(a)(2), Income Tax Regs. We *255 agree with respondent that petitioners are not entitled to a theft loss deduction in 1986 because they did not discover until a later year that Mr. Graham had imposed on them. Marine v. Commissioner, 92 T.C. 958, 975-976 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); Henninger v. Commissioner, T.C. Memo. 1991-574. Petitioners concede as much by saying that they did not know that Gifts was a sham transaction without economic substance when they made their cash payment of $ 3,200 or when they claimed an advertising expense deduction on their 1986 return. To reflect the foregoing, An order granting respondent's motion for partial summary judgment and denying petitioner's motion for partial summary judgment will be issued. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in question.↩
2. Petitioners in a number of related cases have agreed to be bound by our decision on whether petitioners herein are entitled to a deduction for their out-of-pocket cash expenditure.↩
3. For purposes of this discussion, we use the terms intent, motive, and purpose interchangeably, without bearing down on the niceties of the distinctions among them. For an analysis of those distinctions, see Blum, "Motive, Intent and Purpose in Federal Taxation", 34 U. Chi. L. Rev. 485 (1967); see also Young, "The Role of Motive in Evaluating Tax Sheltered Investments", 22 Tax Law. 275↩ (1969).